IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID B. ROBERTS, | ) | CASE NO. 4:14 CV 1522 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

**A.     Nature of the case and proceedings**

Before me[1] is an action by David B. Roberts under 42 U.S.C. § 405(g) for judicial

review of the final decision of the Commissioner of Social Security denying his applications

for disability insurance benefits and supplemental security income.[2] The Commissioner has

answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 13. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 8.

[4] ECF # 9.

[5] ECF # 4.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9]

**B.      Background facts and decision of the Administrative Law Judge ("ALJ")**

Roberts, who was 59 years old at the time of the administrative hearing,[10] has a college education[11] and has been living with a girlfriend.[12] The record indicates that his life currently is shaped by the death of his son in 1993 as the result of an auto accident, and the subsequent sale of his business and bankruptcy following a divorce and alcohol problems.[6]

The ALJ, whose decision became the final decision of the Commissioner, found that Roberts had the following severe impairments: major depressive disorder, generalized anxiety disorder, and history of alcoholism.[7]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Roberts's residual functional capacity ("RFC"):

_____

[6] ECF # 10.

[7] ECF # 12 (Roberts's brief); ECF # 14 (Commissioner's brief).

[8] ECF # 14-1 at 2-5 (Roberts's charts); ECF # 14-1 (Commissioner's charts).

[9] ECF # 14-1 at 1 (Roberts's fact sheet).

[10] ECF # 12 at 8.

[11] Transcript ("Tr.") at 33.

[12] *Id*. at 29.

[6] *Id*. at 29-30.

[7] at 25.

> After careful consideration of the entire record, the Administrative Law Judge finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels. However, he is limited to understanding, carrying out and remembering simple, routine, repetitive and detailed tasks, but not complex tasks; and is restricted to occasional contact with the general public.[8]

The ALJ decided that this residual functional capacity precluded Roberts from performing his past relevant work.[9]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Roberts could perform.[10] The ALJ, therefore, found Roberts not under a disability.[11]

**C.      Issues on judicial review and decision**

Roberts asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Roberts presents the following issue for judicial review:

- Whether the 2012 decision of the ALJ is supported by substantial evidence.[12]

---

[8] *Id.* at 26.

[9] *Id.* at 32.

[10] *Id.* at 33.

[11] *Id.*

[12] ECF # 12 at 4

For the reasons that follow, I will conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

## Analysis

### A.    Standards of review - substantial evidence

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[13]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the

---

[13] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

Commissioner survives "a directed verdict" and wins.[14] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[15]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**B.      Application of standard**

Using the somewhat unusual method of presenting me with a copy of his counsel's comments to the Appeals Council as his current argument, Roberts claims that the decision of the ALJ was not supported by substantial evidence.[14] As the Commissioner observes, this approach puts me to the task of attempting to discern which aspects of the argument to the Appeals Council are relevant here, and further attempting to make the connections between those argument and the ALJ's decision.

To that point, the Commissioner asserts that I should simply deem any argument not precisely made directly to this Court as waived.[15] While taking such a path is tempting, the problem with Roberts's brief is not so much that it is "perfunctory," as was the case in *Dillery,* but that even as it states its claims it reads like what it is - a prepared oral summation, and not a written brief containing detailed citations to the record and to case authority. That

---

[14] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[15] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[14] ECF # 12 at 4.

[15] ECF # 14 at 7 (citing *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005)).

said, this oral summation does set forth a reasonably clear statement of the issues in a manner sufficient to permit meaningful judicial review.

Accordingly, a fair reading of the oral argument reveals three issues:

- that the ALJ erred in not finding that Roberts met Listing 12.04(C)(2);

- that the ALJ erred in not finding that Roberts's primary impairment is depression, not substance abuse; and

- that Roberts should be found disabled at Step Five because: (a) all the jobs found by the VE as applicable to the RFC were skilled or semi-skilled jobs where no skills would be transferable to other jobs, thus being unsuited to the claimant who was 55 years old at the time, and (b) in addition to the absence of transferable skills, the identified jobs had other non-exertional factors that would make Roberts unemployable under this RFC.[16]

## 1.    *Listing 12.04(C)(2)*

Although the claim is not developed in the brief, it appears that Roberts essentially contends that his depression met Listing 12.04(C)(2).

Listing 12.04(C)(2) is satisfied when a claimant has a:

> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of an ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
> ...

## 2.    *A residual disease process that has resulted in such a marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate.*[17]

---

[16] ECF # 12 at 5-6.

[17] *See*, 20 C.F.R. §§ 404.1520(d), 404.1525(a)(Certain impairments included in the Listing of Impairments at 20 C.F.R. part 404, subpart P, App. 1, which impairments are

-6-

After noting that Roberts does have the severe impairment of major depressive disorder,[18] the ALJ here then specifically considered if that impairment met or medically equaled Listing 12.04 by addressing the B criteria, which require that the claimant has marked restriction in the activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.[19]

The ALJ found that Roberts has only a mild restriction in activities of daily living, moderate difficulties in social functioning and in maintaining concentration, persistence, or pace, and no history of significant decompensations of extended duration.[20] Further, the ALJ found that "the evidence does not suggest the likelihood of such decompensations, that a highly-supportive living arrangement is required or that the claimant is completely unable to function independently outside the immediate area of the home."[21]

Accordingly, the ALJ concluded that while "the evidence shows that the claimant has severe mental impairments, .... the weight of the evidence further shows that neither B or C

_____

considered disabling regardless of an individual's age, education, or work experience).

[18] Tr. at 25.

[19] *Id*. (citing Listing).

[20] *Id*. at 25-26.

[21] *Id*. at 26.

disability criteria of any mental impairment listed in Appendix 1 to Subpart p, 20 C.F.R., Part 404, have been met or equaled.[22]

Without a more detailed and specific statement of how or why the ALJ erred in making this determination, my review of the ALJ's reasoning, supporting evidence and conclusion show no errors in any of those areas. For his part, Roberts has pointed to no evidence in the record that would establish that his depression was so severe that he would decompensate if minimal changes were made in the mental demands placed on him, or in his environment.

Thus, I find no error in the determination that Roberts does not meet or equal Listing 12.04(C)(2).

### 3. *The ALJ appropriately found that depression was a primary impairment, not alcoholism*

Again, Roberts does not elaborate in his brief as to how the ALJ erred in this instance. As noted, the decision lists Roberts's severe impairments as major depressive disorder, generalized anxiety disorder, and history of alcoholism.[23] Here, the ALJ examined whether Roberts met or equaled the listing in all three areas.[24] As such, it cannot be claimed that the ALJ neglected to view depression the primary impairment, but rather reviewed every listed impairment to see if Roberts met or equaled any of them.

---

[22] *Id.*

[23] *Id*. at 25.

[24] *Id*. (citing Listings 12.04 (affective disorders), 12.06 (anxiety disorders), and 12.09 (substance abuse disorders).

-8-

Thus, I see no error in the ALJ's process or conclusions.

**4.     *The ALJ appropriately relied in the testimony of the VE***

Roberts argues that the ALJ erred in formulating the RFC by "ignoring" hypothetical questions posed to the VE by claimant's counsel.[25] Specifically, he contends that due process is violated when an ALJ simply ignores a claimant's inquiries to the VE by giving no reasons in the record why the ALJ implicitly rejected the assumptions underlying the questions.[26]

In that regard, Roberts points to hypothetical questions posed by counsel. In the first hypothetical, counsel asked the VE to assume that the claimant's RFC included a restriction to medium exertional level work, and required that the work involve only simple, routine, repetitive tasks and detailed tasks that were not complex.[27] The ALJ replied that none of Roberts's past work would have jobs meeting those requirements.[28]

In the second hypothetical, the VE was asked to consider an RFC where the individual was unable to sustain attention, concentration, persistence and pace during an eight-hour day for a year; in other words, would have an "ongoing problem" in this regard.[29] Again, the VE

---

[25] ECF # 12, Attachment at 2.

[26] *Id*.

[27] *Id*. at 4 (quoting record).

[28] *Id.* (quoting record).

[29] *Id*. (quoting record).

responded that there would not be a significant number of jobs available, "particularly at the age that we're talking about."[30]

Next, Roberts's counsel added an additional element to the previous hypothetical, asking if work would be available to a person who missed more than two days of work per month for any reason.[31] The VE replied that, when these restrictions are added to the others, there, again, would be no jobs.[32]

After Roberts's counsel clarified that none of the past work the VE was referencing had any transferable skills, the ALJ then further clarified the above colloquy.[33] Specifically, the ALJ clarified that the question about missing two days per month did not mean a cumulative two days, such as would be the case of missing an hour per day due to the lack of concentration, persistence or pace.[34] The VE testified that in either case - missing an hour per day each eight-hour day or missing two full days - there would be no jobs available.[35]

---

[30] *Id*. (quoting record).

[31] *Id*. (quoting record).

[32] *Id*. at 5 (quoting record).

[33] *Id*. (quoting record),

[34] *Id*. (quoting record).

[35] *Id*. at 5-6 (quoting record).

-10-

Finally, Roberts's counsel modified the first hypothetical to remove the element of detailed tasks, and modified it again to include a restriction against contact with the general public.[36] Once more, the VE testified that no work would be available.[37]

Here, Roberts is attempting to mount a back-door challenge to the actual RFC, wherein the ALJ found that he was capable of a full range of work at all exertional levels, with the restriction that he is "limited to understanding, carrying out and remembering simple, routine, repetitive and detailed tasks, but not complex tasks; and is restricted to occasional contact with the general public."[38] While Roberts undoubtedly believes that his impairments do not permit him to do detailed tasks, have any contact with the public or require that he miss two days of work per month, he has not shown why the restrictions of the RFC are not supported by substantial evidence.

Indeed, the ALJ carefully articulated his reasons for the RFC over nearly seven pages of analysis, with numerous citations to the record. In so doing, he provided a basis for meaningful judicial review of that decision, which is the process due the claimant.[39] Absent any specific challenge to a particular evidentiary foundation for that decision, Roberts's ungrounded attempt to require an ALJ to discuss in detail his reasons for discounting the premise of merely hypothetical questions is unpersuasive.

---

[36] *Id*. at 6 (quoting record).

[37] *Id.*

[38] Tr. at 26.

[39] *See, Blakley*, 581 F.3d at 407.

## Conclusion

Substantial evidence supports the finding of the Commissioner that Roberts had no disability. The denial of Roberts's applications is affirmed.

IT IS SO ORDERED.

Dated: August 31, 2015                              s/ William H. Baughman, Jr.
                                                    United States Magistrate Judge